UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

JAMES DEPREY,

        Plaintiff,

v.                                               Case No. 04-C-1151

OIL-RITE CORPORATION,

        Defendant.

---

**DECISION AND ORDER**

---

Plaintiff James Deprey was terminated from his employment at defendant Oil-Rite Corp., a Manitowoc company. He filed this lawsuit in state court, alleging retaliation and sexual harassment in violation of Title VII. The defendant removed the case to federal court and subsequently filed a motion for summary judgment. For the reasons given herein, the motion will be granted and the case dismissed.

**I. BACKGROUND**

Plaintiff's case focuses primarily on the conduct of Carolyn Boldt, the president of Oil-Rite, and Don Gruett, the company CEO. He claims that Boldt and Gruett acted in a flirtatious and unprofessional manner toward each other and that on a couple of occasions Boldt made sexually suggestive comments toward him. Although most of the conduct plaintiff attributes to Boldt is sharply disputed, plaintiff's assertions must be taken as true for purposes of deciding the defendant's motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). With this caveat, I will briefly recount the pertinent facts in the light most favorable to the plaintiff.

During company meetings on a number of occasions, the plaintiff alleges that Boldt would perch herself on Gruett's lap. Gruett, on other occasions, was inclined to slap Boldt on the butt. (PPFOF ¶ 9a.) During an event honoring Boldt's 25 years of service to the company, the two were observed grasping each other's thighs underneath the table. (*Id.*) In addition, Gruett had a proclivity for making off-color jokes involving blondes, breast size, and the like, although the plaintiff himself did not remember the content of any of Gruett's jokes. On one occasion, the plaintiff entered Gruett's office only to observe both Gruett and Boldt "holding hands in a cupped hand, romantic fashion." (PPFOF ¶ 9d.)

Deprey does not claim that Gruett's and Boldt's intimate behavior was either directed at him or intended to make him feel uncomfortable because of his male sex. (PPFOF ¶¶ 16-18.) On a few occasions, however, he claims he was the recipient of direct harassment. Once, when he wore a leather tie to work during the 1990s, Boldt asked him if he had underwear to match. He chuckled at her joke, and continued to wear the tie occasionally. (PPFOF ¶ 19.) On another occasion, also during the 1990s, Boldt asked Deprey if he wanted to work on a project at her home with her while her husband was not home. He thought this was a proposition for sex, and declined. (PPFOF ¶ 22a.)

In February 2003, several years after most of this activity had occurred, James Deprey was laid off due to poor sales. Soon after receiving this news, he told the human resources director, Tim Schmitt, about the flirtatious behavior between Boldt and Gruett and about the alleged proposition from Boldt in the mid-1990s that he had declined. (PPFOF ¶ 51a.) Oil-Rite claims Deprey was just blowing off steam and was warning Schmitt that he had "dirt" on the company. Deprey does not dispute that he told Schmitt he had "dirt" on the company that would prevent it from firing him,

2

Case 1:04-cv-01151-WCG    Filed 11/09/05    Page 2 of 9    Document 50

but claims he told Schmitt about the behavior because it had been bothering him for years and Schmitt was the logical person to tell since he was in charge of personnel matters. (PPFOF ¶ 52a.)

In any event, Deprey returned to work after a month-long layoff. In June, Deprey again mentioned his complaints to Schmitt. He hoped the behavior between Boldt and Gruett would stop and expected that Schmitt would bring his complaint to Boldt's attention. (PPFOF ¶ 58c.) Yet the parties agree that the conversation was not in the mode of a formal complaint–e.g., an employee meeting with a personnel manager about a personnel issue–but instead was simply "chit chat" or office gossip between two employees. (DPFOF ¶ 59, PPFOF ¶ 59a.) Moreover, Schmitt's impression was that the behavior Deprey was complaining about had occurred "years" before and Deprey's comments were just "more of the same." (PPFOF ¶ 56a.; DPFOF ¶ 60.)

Schmitt was laid off himself on June 27, 2003 due to slow business, and Debbie Schuh took over personnel matters for the company. (DPFOF ¶ 62.) Through another employee, word soon got to Boldt that Deprey was saying he had been propositioned by her. On July 9, as soon as she learned about the accusation, Boldt convened an impromptu outdoor meeting involving Deprey and three other management employees. Some involved in the meeting described Boldt as being upset and, at times, teary-eyed, at one point stating that she could lose her husband and daughter as a result of Deprey's accusations. (Boldt disputes this characterization.) During the meeting, which lasted some five minutes, Deprey denied that he had told Schmitt about being propositioned by Boldt. (DPFOF ¶¶ 65, 66.) He also denied that the proposition had ever taken place, although he claims he later told some participants in the meeting the story was true. (PPFOF ¶ 66a.) Boldt and Deprey dispute whether Deprey stated in the meeting that he had always been uncomfortable about her public intimacy with Gruett.

3

Following the meeting, relations between Boldt and Deprey became frosty. (PPFOF ¶ 66e.) Boldt had directed Schuh to investigate the matter and, on July 22, she met with Deprey and others to discuss his discomfort. Deprey signed a copy of the minutes of that meeting, in which he indicated that the conduct causing his discomfort was no longer occurring and that it had happened some ten years earlier. He now claims that he signed off on the minutes because he was fearful for his job. (PPFOF ¶ 72b.)

His fears were apparently well-founded because he was terminated from his position in sales on July 25, some three days later. He was offered a lower-paying job on the shop floor, but declined. The reason Boldt gives for the termination was that he lied about the alleged proposition and that she could no longer work with him. She also claimed that the company wanted a more experienced marketing person in the sales job.

## II. ANALYSIS

Summary judgment is appropriate when there exist no genuine issues of material fact and it is clear that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56.

**1. Harassment**

Deprey brings his Title VII claim based on both harassment/hostile work environment and an illegal retaliation. The harassment claim can be dispatched with summarily. Deprey admits that almost none of the allegedly harassing behavior was directed at him–it was simply flirtatious behavior between two others that he happened to witness on a number of occasions. In order to demonstrate indirect, or unintentional, harassment, Deprey must show that the effect of the behavior he complains of was to create a hostile work environment. A plaintiff in a sexual harassment case can demonstrate a hostile work environment only when the environment was "so 'severe or

4

pervasive' as to 'alter the conditions of employment and create an abusive working environment.'" *Faragher v. City of Boca Raton,* 524 U.S. 775, 786 (1998)(citations omitted).

Deprey concedes that most of the behavior that *was* directed at him–the alleged proposition and the comments about his leather tie–fall outside of the 300-day limitations period for Title VII cases. Indeed, those events occurred several *years* before the EEOC complaint was filed. He is thus limited to arguing that the intimate behavior between Boldt and Gruett, which he happened to witness, created a hostile work environment for him. As the Supreme Court has noted, the phrase "hostile work environment" does not appear in the statutory text. *Burlington Industries, Inc. v. Ellerth,* 524 U.S. 742, 752 (1998). Instead, the statute merely prohibits discrimination in the employment context on the basis of sex. 42 U.S.C. § 2000e-2(a)(1). Thus, Title VII does not create a blanket prohibition of all "hostile" work environments, but merely those whose hostility results from discrimination on the basis of sex. As Justice Ginsburg has put it, "[t]he critical issue, Title VII's text indicates, is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed." *Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 25 (1993)(Ginsburg, J., concurring).

There is no evidence in this case, nor is any imaginable, which would indicate that the allegedly hostile nature of the work environment at Oil-Rite was hostile for Deprey because he was a man. Deprey focuses only on the purported hostility of the environment (both subjective and objective), highlighting his own offense at the dirty jokes occasionally made by Gruett and the mutually grabby relationship between his bosses. But he does nothing to show that he was offended by his bosses' behavior *because he was a man*. Indeed, his principal corroborating witness is a woman, Donna Solar, who is a former Oil-Rite vice-president. Solar, like Deprey, also testified to being offended by the behavior of Boldt and Gruett. (Solar Aff., ¶ 9; "I felt the conduct was

5

disgusting.") It's often repeated that Title VII does not impose regime of decorum or good taste in the workplace; instead, it merely prohibits discrimination on the basis of sex, religion, race, national origin or color. There is no evidence whatsoever that such discrimination occurred here because none of the conduct alleged–even if offensive–was discriminatory on the basis of Deprey's sex.

**2. Retaliation**

In America, absent a contract providing otherwise, employment is an "at will" relationship; either party can terminate it for almost any reason. Neither Title VII, nor any other federal law, creates a general right to employment. Instead, as noted already, Title VII's scope is limited to ensuring that terminations and other unfavorable employment actions are not based on sex or any of the other protected categories. A corollary of Title VII's reach is that an employee may not be subject to unfavorable employment actions for invoking the protections of the statute.

The statute provides:

It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C.A. § 2000e-3(a). Deprey proceeds under the theory that he was fired because he "opposed any practice made an unlawful employment practice by this subchapter." Above I have concluded that the practices Deprey opposed were not unlawful under Title VII, and thus it would appear plain that Deprey could not be retaliated against for opposing them. Adding claims based on isolated behavior that occurred nearly a decade earlier–a stray quip about leather underwear and an alleged sexual proposition–do not materially bolster Deprey's case. Yet the law on retaliation is not so stingy. Instead, despite the statute's plain language, Deprey may succeed on a retaliation claim if he can show he had a reasonable belief that the conduct opposed was in fact prohibited by Title VII.

*Dey v. Colt Const. & Development Co.,* 28 F.3d 1446, 1458 (7th Cir. 1994)("it is good faith and reasonableness, not the fact of discrimination, that is the critical inquiry in a retaliation case.")(quoting *Rucker v. Higher Educ. Aids Bd.,* 669 F.2d 1179, 1182 (7th Cir.1982)).

While good faith implies a subjective standard (which is often inappropriate to decide at the summary judgment stage), reasonableness is founded in objectivity. That is, the plaintiff's belief that he was opposing employment practices that violated Title VII must be an objectively reasonable one. *Hamner v. St. Vincent Hospital and Health Care Center, Inc.,* 224 F.3d 701, 706 (7th Cir. 2000). As the Seventh Circuit has interpreted the requirement, it means that a plaintiff may succeed on a retaliation claim if, for example, the conduct complained of was not serious enough to actually violate Title VII but was at least of the ilk that *could* have. *Id.* at 707. Thus, "[i]f a plaintiff opposed conduct that was not proscribed by Title VII, no matter how frequent or severe, then his sincere belief that he opposed an unlawful practice cannot be reasonable." *Id.* In *Hammer* the plaintiff's belief that he was opposing discrimination based on his sexual orientation was not a reasonable one because sexual orientation is not a protected class under the statute– no matter how many anti-gay remarks his supervisors made, they would not constitute violation of Title VII. *Id.* Here, as in *Hammer,* the vast majority of the plaintiff's retaliation claim is based on activity that had nothing whatever to do with Deprey's sex, the only protected group at issue here. That is, his bosses could have engaged in all the groping and holding of hands they wanted and it would not result in Deprey being discriminated against because of his sex.[1] Accordingly, any retaliation claim based on the behavior of Gruett and Boldt is not founded on a reasonable belief that Deprey was opposing activity prohibited by Title VII.

---

[1] Assuming they carried on in such a fashion at all which, to repeat, is accepted only for purposes of deciding defendant's motion.

7

The remainder of the retaliation claim relies on Deprey's complaint to Schmitt about Boldt's proposition to him in the mid-1990s. A proposition from a female boss to a male underling, if repeated or made in a threatening manner, could indeed constitute a hostile work environment. Thus, unlike his complaints about Gruett's and Boldt's behavior, Deprey's complaint about Boldt's alleged proposition is at least of the *kind* of activity that *could* be prohibited by Title VII. But the Supreme Court has emphasized that for one's belief to be reasonable, one's opposition must relate not only to the *kind* of activity prohibited by Title VII but also to the *degree* of that activity.[2] In *Clark County School Dist. v. Breeden,* the Court unanimously reversed the Ninth Circuit's decision that found an employee's retaliation claim based on two isolated incidents to be reasonable. Although both of those incidents involved the kind of activity Title VII protects against, the Court concluded that because they were so isolated an employee's opposition to them could not be actionable because the behavior was not "so 'severe or pervasive' as to 'alter the conditions of [the victim's] employment and create an abusive working environment.'" 532 U.S. 268, 270 (2001). "No reasonable person could have believed that the single incident recounted above violated Title VII's standard. . . . Her supervisor's comment, . . . her co-worker's responding comment; and the chuckling of both are at worst an 'isolated inciden[t]' that cannot remotely be considered 'extremely serious,' as our cases require." *Id.*

The Seventh Circuit's more recent decision in *Mattson v. Caterpiller, Inc.* reflects this approach as well. 359 F.3d 885 (7th Cir. 2004). There, even though the behavior was the kind of activity potentially prohibited by Title VII–touching of a breast and other physical interactions–the

---

[2]Notably, the Court in *Clark* did not rule on the propriety of the reasonable belief test at all, but merely applied it because its application solved the case. "We have no occasion to rule on the propriety of this interpretation, because even assuming it is correct, no one could reasonably believe that the incident recounted above violated Title VII." 532 U.S. at 270.

8

court found that it was so attenuated that no reasonable person could believe it violated the statute. *Id.* at 889. Thus, based on *Clark* and *Mattson,* it is clear that for a plaintiff to harbor a reasonable belief of opposition to activity prohibited by Title VII, the activity complained about must not only be the kind of activity prohibited by Title VII but also at least reasonably close in degree as well. Applied here, I find that Deprey could have no reasonable belief that his mentioning to Schmitt in 2002 or 2003 a single sexual proposition made nearly a decade earlier involved any activity prohibited by Title VII. Far more likely, it was reported simply to alert Schmitt to the "dirt" plaintiff thought he had on the company. In any event, this is the classic example of an "isolated incident," whose isolation is made even starker by the fact that several years had passed with nothing occurring in-between except a solitary joke about leather underwear. There was nothing even remotely approaching harassment or a hostile work environment here, and any belief that there was could not be said to be reasonable. Accordingly, the retaliation claim must be dismissed as well.[3]

For these reasons, IT IS ORDERED that the motion for summary judgment is GRANTED; the motion to file a reply brief in excess of 15 pages is GRANTED; the motion to exclude testimony is DENIED as moot.

Dated this __9th__ day of November, 2005.

                                                      s/ William C. Griesbach
                                                    William C. Griesbach
                                                    United States District Judge

---

[3] There are also substantial questions about what it means to "oppose" activity prohibited by Title VII; here, there is significant evidence that Deprey's complaints were more in the mode of office gossip or "chit chat" rather than any sort of explicit opposition worthy of protection.

9